**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.                                                                           Case Number: 09 CR 03071 WJ

ABRAHAM BOBADILLA-CAMPOS and
BIANCA SANCHEZ-CABALLERO,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR *DAUBERT* HEARING**

THIS MATTER comes before the Court upon Defendant's Motion for *Daubert* Hearing, filed August 22, 2011 **(Doc. 76)**. In this motion, Defendant challenges several types of expert testimony the Government is expected to present at trial: a forensic chemist, and experts presenting testimony on "tools of the trade" as well as pertaining to the methods and operations of drug traffickers. Defendant requests a hearing in order to determine the admissibility of such evidence under *Daubert*. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied at this time.

**Discussion**

In *Daubert v. Merrel Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the Supreme Court explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant. *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786; *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir.1999). The district judge must, first, determine whether the proffered testimony is reliable, requiring an assessment of whether the

reasoning or methodology underlying the testimony is scientifically valid and, second, determine whether that reasoning or methodology can be properly applied to the facts in issue. *Daubert*, 509 U.S. at 592-93, 113 S.Ct. 2786. The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id*. at 592-94, 113 S.Ct. 2786. Subsequently, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court emphasized that these four factors are not a "definitive checklist or test" and a court's inquiry into reliability must be "tied to the facts of a particular case." Id. at 150, 119 S.Ct. 1167. According to the Court, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 152, 119 S.Ct. 1167.

**I.     Forensic Expert**

The Government has provided notice of the proposed testimony of Dr. Liu Xiu, a forensic chemist for the DEA. Testimony regarding tests and procedures used to identify certain drug substances have been used for decades in identifying certain drug substances. *See U.S. v. Cavely*, 318 F.3d 987, 997 (10th Cir. 2003) (district court could properly conclude that drug analysis technique was used commonly by forensic chemists and was generally accepted within the field); *see also United States v. Higgins*, 282 F.3d 1261, 1279–80 (10th Cir.2002) and *United States v. Becker*, 230 F.3d 1224, 1226 (10th Cir.2000) (noting that method of estimating methamphetamine production "has frequently been used with regard to sentencing issues"). Defendant does not specify any reason why the Court should question the reliability of the techniques used by Dr. Xiu in this case. Thus, the Court finds no legal basis to question the

reliability of Dr. Xiu's opinion. *See U.S. v. Craven*, unpubl. opin. 2005 WL 1275101, *2 (10th Cir. 2005) (whether defendant did not articulate a reason why the criminalist's report was in error or otherwise unreliable, the court presumed such evidence to be reliable).

## II.   Testimony Concerning "Tools of Trade" and Drug Trafficker Methods/Operations

Defendant contends that testimony regarding the use of cell phones as a "tool of the trade" because a jury does not need an expert to explain that a cell pone can be utilized for communication purposes, even for alleged drug traffickers. *U.S. v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000) (upholding use of expert testimony regarding "tools of the trade where jury would not understand significance of possession of those items). However, as the Government notes, expert testimony concerning "tools of the trade"—including cell phones and pagers— has been commonly used and accepted as reliable. *See, e.g., U.S. v. Burkley*, 513 F.3d 1183, 1189 (10th Cir. 2008) (expert witness testified that defendant's possession of more than one cell phone was a common practice in drug trade) (citing to *U.S. v. Cox*, 934 F.2d 1114, 1121 (10th Cir.1991) (indicating that possession of pager is evidence of intent to distribute)); *U.S. v. Perez,* 280 F.3d 318, 342 (3rd Cir. 2002) (expert testimony presented to explain how drug traffickers use cell phones to frustrate police investigators who are trying to find the location of a drug delivery or to intercept numeric coded messages). Testimony on other kinds of items or "tools of the trade" has also been found to be helpful to the jury in understanding the evidence. *See, e.g., U.S. v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991) (finding that district court did not abuse its discretion by admitting expert testimony of law enforcement officer about "street level" drug dealing because jurors do not have "background knowledge of how a drug dealer works"); *U.S. v. Solis*, 923 F.2d 548 (7th Cir. 1991) (affirming use of expert testimony on use of beepers in drug trafficking).

Similarly, courts have permitted experts to testify on the methods and operations used by drug dealers in order to assist the jury understand the evidence presented at trial. *See McDonald*, 933 F.2d 1519 (expert was properly permitted to testify as to significance of quantity of cocaine, that crack is commonly exchanged for food coupons, and that dealers frequently arm themselves to protect merchandise and money); *Burkley*, 513 F.3d at 1189 (citing to cases involving uses for commonplace items by drug dealers).

Defendant challenges the proposed expert testimony on general grounds, contending that it constitutes improper profile evidence and that it is inherently prejudicial in nature because it includes characteristics of innocent citizens and actions. Doc. 76 at 4. In *U.S. v. McDonald*, the Tenth Circuit acknowledged that the common use of profile evidence "is to make investigatory stops" and that its use has been "condemned. . . as substantive evidence of guilt." 933 F.2d at 1521. At the same time, however, the court rejected its application to evidentiary principles, and stated that the "better approach is to commence our inquiry with an examination of the applicable rules of evidence. . . ." *Id.* at 1522. In the end, the Tenth Circuit concluded that the "proper test" was a determination as to whether "the expert testimony consisted of specialized knowledge [that would] assist the jury in understanding the evidence." *Id*. Thus, there is no merit to Defendant's argument that the proposed expert testimony is improper profile evidence. The Court here is following the analysis in *McDonald* analysis, which also happens to be the accepted inquiry for the Court's gatekeeping role.[1]

---

[1] The other cases cited by Defendant are not persuasive because the rejection of expert testimony in those cases was based on the facts of those cases and the specific uses for which the testimony was offered. For example, in *U.S. v. Quigley*, 890 F.2d 1019 (9th Cir. 1989), the Eighth Circuit reversed the district court's admission of expert testimony regarding drug courier profile as substantive evidence that defendant committed the crime, although it was harmless error). In *U.S. v. Echavarria-Olarte*, 904 F.2d 1391, 1398 (9th Cir. 1990), the Ninth Circuit

Defendant also argues that the proposed expert testimony is extremely prejudicial without explaining why this is so in this particular case.  The proposed testimony by the Government's expert witness is inherently prejudicial to a defendant, but there is no reason to find the testimony here to be unduly prejudicial under a Rule 403 balancing inquiry.

I see no reason to hold a *Daubert* hearing at this time.  *See Goebel v. Denver and Rio Grande Western R.R. Co.,* 215 F.3d 1083, 1087 (10th Cir. 2000); *U.S. v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999) (district court granted great latitude in "deciding whether to hold a formal hearing").  While a hearing is the most common method for fulfilling the *Daubert* gatekeeping function, a court may also satisfy its gatekeeper role "when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion so long as the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Goebel*, 215 F.3d at 1087 (citing *Daubert*, 509 U.S. at 597).  The Government has stated that it will be offering expert testimony in several categories which have been commonly accepted in this circuit and in others.  The Court has considered the applicable case law as well as the reasons for which the Government will be presenting expert testimony.  Thus far, the Court has not been alerted to any potential unreliability or improper purpose with regard to this testimony.  Defendant does not challenge the specific purpose for which the testimony will presented, and instead offers a generic challenge to all of the Government's proposed expert testimony.  This is insufficient for a *Daubert* challenge, nor does it provide the Court with any basis to believe that the proposed expert testimony should be

---

held that the expert's testimony was prejudicial because it was too broad in scope and "should have been confined to persons and acts that could be tied to the two smuggling operations with which [defendant] was charged.  There is no indication that the Government will be offering expert testimony for similar purposes.

5

precluded at this point. Of course, the matter may be revisited should an issue arise unexpectedly at trial with regard to propriety of the testimony.

### Conclusion

In sum, I find and conclude that Defendant's motion for a *Daubert* hearing shall be denied. The Government's proposed expert testimony fall into categories which courts have generally found to involve specialized knowledge, which are reliable under *Daubert*, and which are helpful to the jury in understanding the issues that need to be decided at trial. I also find and conclude that the testimony survives Rule 403's balancing test in that its probative value is not substantially outweighed by the danger of unfair prejudice to Defendant.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for *Daubert* Hearing (**Doc. 76**) is hereby DENIED for reasons described above.[2]

_____
UNITED STATES DISTRICT JUDGE

---

[2] In light of the Court's disposition of this motion, the Court will not need to address this motion at the upcoming hearing on pending pre-trial motions.